Michael F. HAHN, and Marie Hahn, Plaintiffs–Appellants,

v.

STAR BANK, et al., Defendants–Appellees.

No. 98–3680.

United States Court of Appeals, Sixth Circuit.

Submitted: Aug. 5, 1999

Decided and Filed: Sept. 2, 1999

Kim M. Astrella (briefed), LANE, AL-TON & HORST, Columbus, Ohio, Robert H. Willard (briefed), Columbus, Ohio, John W. Beatty, Wendy L. Anderson (briefed), DINSMORE & SHOHL, Cincinnati, Ohio, Karen E. Rubin, Keith L. Carson (briefed), THOMPSON, HINE & FLORY, Cleveland, Ohio, for Appellees.

Michael F. Hahn, Marie Hahn (briefed), Columbus, Ohio, pro se.

Before: JONES, SILER, and GILMAN, Circuit Judges.

## OPINION

RONALD LEE GILMAN, Circuit Judge.

Michael F. Hahn and Marie Hahn appeal from three adverse rulings of the district court that in the aggregate disposed of all of their claims arising from the alleged improper disclosure of their Star Bank loan file. For the reasons set forth below, we AFFIRM the decision of the district court.

## I. BACKGROUND

Star Bank approved a loan application submitted by Michael and Marie Hahn in September of 1990. The Hahns used the loan proceeds to build a new house. Because the drywall used in the construction proved to be defective, they filed a lawsuit in the Court of Common Pleas of Franklin County, Ohio against 84 Lumber, the retail seller of the drywall. 84 Lumber impleaded the manufacturer of the drywall, Domtar Gypsum, as a third-party defendant. Domtar is now owned by Georgia–Pacific Corporation ("G–P"). Star Bank was not a party in the state court proceeding.

The suit resulted in a jury verdict in favor of the Hahns. At the conclusion of the trial on October 29, 1993, the attorney for 84 Lumber, John Gonzales, handed the Hahns their loan file that Gonzales had obtained from Star Bank pursuant to a subpoena. The subpoena had requested "[a]ny and all files, documents, or other papers regarding Construction Loan No. 13953, in the name of Michael F. or Maria A. Hahn."

Michael Fusco was the attorney representing the Hahns in the drywall case. Gonzales's affidavit stated that he had served Fusco with a copy of the subpoena on October 8, 1993. He attached to the affidavit a copy of the October 8, 1993 transmittal letter from himself to Fusco. Fusco's original affidavit asserted that he had no recollection of receiving a copy of the subpoena from Gonzales. In a subsequent affidavit, however, Fusco stated that his prior affidavit was based solely on his recollection of events that had occurred four years previously and that he has not reviewed his files to determine if he had in fact received a copy of the subpoena.

On October 28, 1996, the Hahns filed suit against Star Bank and two of its employees in the United States District Court for the Southern District of Ohio. The Hahns' new counsel was Tobias Elsass. They alleged that Star Bank improperly provided their loan file to Gonzales, and that this conduct constituted a breach of confidentiality, invasion of privacy, defamation, breach of trust, interference with business relations, negligence, the tort of outrage, and emotional distress. Specifically, the Hahns claimed that no subpoena had been issued to Star Bank and that the production of the loan file was therefore improper. Star Bank filed a motion to dismiss on the basis that neither diversity of citizenship nor federal question jurisdiction existed. While the motion was pending, the Hahns voluntarily dismissed the suit on February 10, 1997.

On June 13, 1997, the Hahns, still represented by Elsass, refiled their complaint in the district court. They again named Star Bank as a defendant and added a number of new defendants. The "Star Bank defendants" consist of Star Bank and five of its officers. John M. Gonzales and the law firm in which he is a partner, Crabbe, Brown, Jones, Potts & Schmidt, will be referred to as the "Gonzales defendants." The "G–P defendants" consist of G–P, Domtar Gypsum (n/k/a G–P Gypsum), Domtar's lawyer from the drywall action, William B. Leahy, and the law firm in which Leahy is a partner, Thompson, Hine & Flory. The last group of defendants, known as the "84 Lumber defendants," is comprised of 84 Lumber, Pierce–Hardy Real Estate, Inc., and 84 Associates, Inc.

In their refiled complaint, the Hahns alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681—1681u (West & Supp.1998), their right to privacy under the United States Constitution, and their civil rights under 42 U.S.C. § 1985, as well as numerous

causes of action based on state law. Their claims were once again premised upon the theory that no subpoena had ever been issued to Star Bank, thus making the disclosure improper. Based upon this theory, the Hahns' 35–page complaint set forth 13 separate legal theories for recovery and sought $20,000,000 in compensatory and punitive damages against the 15 defendants.

In July of 1997, Star Bank provided the Hahns' counsel with a copy of the subpoena that Gonzales had served on the bank. Pursuant to the "safe harbor" provisions of Rule 11 of the Federal Rules of Civil Procedure, Star Bank requested that the Hahns dismiss their allegedly frivolous action, given that the subpoena was in fact issued to the bank. The Hahns refused to dismiss their lawsuit. One month later, the Star Bank defendants moved for dismissal based on the Hahns' failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Included among the attachments to Star Bank's motion was the original subpoena, which shows that it was received by the bank on October 12, 1993.

The Hahns, though their counsel, filed a memorandum in opposition to the motion and attached a large number of exhibits. The Star Bank defendants' motion was fully briefed and submitted as of September 26, 1997. In November of 1997, discovery was stayed by the magistrate pending a decision on Star Bank's motion. Also in November of 1997, the Hahns' attorney, Elsass, was suspended from the practice of law for reasons unrelated to the Hahns' case. The Hahns have been proceeding *pro se* since that time.

In an opinion dated March 26, 1998, the district court granted Star Bank's motion for summary judgment. A month and a half later, on May 8, 1998, the district court issued an opinion denying the Hahns' motion for leave to amend their complaint to add four new causes of action. It de-

nied the motion to amend on the basis that the claims set forth in the amended complaint failed to state a cause of action, and thus were futile. Finally, on May 11, 1998, the district court issued an opinion dismissing the Hahns' complaint against all of the remaining defendants. The Hahns now appeal these three rulings.

## II. ANALYSIS

### A. Summary judgment granted in favor of the Star Bank defendants

#### 1. *Standard of review*

We review *de novo* the district court's grant of summary judgment. *See, e.g., Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir.1997). Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The judge is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial is presented when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

#### 2. *The Hahns' FCRA claims are barred by the statute of limitations*

All claims brought under FCRA must be brought within two years from the date on which liability arises unless the defendant has "wilfully misrepresented any information required under [FCRA] to be disclosed . . ." and such information is "material," in which case the limitation is two years after discovery of the misrepre-

sentation. *See* 15 U.S.C. § 1681p. The Hahns allege that they first discovered that a copy of their loan file had been produced on October 29, 1993. Yet the Hahns did not file their original action regarding the loan file until three years later, on October 28, 1996. So unless the wilful misrepresentation exception applies, all of the Hahns' claims under FCRA are barred by the two year statute of limitations.

According to the Hahns, they were wilfully misled by Jeff Bonynge, a Vice President of Star Bank, when he represented to them that Star Bank had released the loan file pursuant to a valid subpoena. This conversation occurred on July 3, 1995. The Hahns assert that FCRA requires that the subpoena be an order of the court (*see* 15 U.S.C. § 1681b(a)(1)), and that the relevant subpoena in this case was issued by Gonzales, who is an attorney, not a judge. Under this theory, the Hahns contend that Bonynge specifically misrepresented the fact that the subpoena was valid. The Hahns maintain that they did not learn that the subpoena was invalid (in their view) until Star Bank provided their former counsel Elsass with a copy of the subpoena on July 7, 1997.

Contrary to the Hahns' argument, we find no need to reach the issue of whether they were wilfully misled by Bonynge's statement regarding the subpoena's validity. In the first place, the subpoena issued by Gonzales has every appearance of being "an order of a court," given that it is signed by Gonzales on behalf of the clerk of the court. *See In re Grand Jury Proceedings*, 503 F.Supp. 9, 12 (D.N.J.1980) (reasoning that an "order of a court" under this section of FCRA may be oral, may be a paper bearing the word "order" that is "signed by a judge or other judicial officer[,][o]r it may be a subpoena, writ of execution or other process."). Secondly, the tolling language in § 1681p only applies to the wilful misrepresentation of material information "required under [FCRA] to be disclosed." Bonynge's alleged statement regarding the subpoena does not fit within the statutory language. The question surrounding the subpoena's validity in no way relates to any information that Star Bank would be required to disclose under FCRA, even assuming that FCRA's requirements apply to Star Bank. (*See* 15 U.S.C. § 1681a(f) for the definition of a "consumer reporting agency.") The Hahns' claimed reliance on whatever Bonynge said regarding the subpoena therefore provides them with no basis to toll the two year statute of limitations.

Accordingly, the Hahns have failed to demonstrate that the wilful misrepresentation tolling exception applies to their case. We therefore hold that all of their claims raised under FCRA are barred by the statute of limitations. *See Rylewicz v. Beaton Servs., Ltd.*, 888 F.2d 1175, 1181 (7th Cir.1989) (holding that a plaintiff must fit within the precise wording of the tolling exception to avoid being barred by FCRA's statute of limitations provision).

We find no inequity in reaching this result. As of October 29, 1993, the Hahns were personally aware of the fact that their loan file, which included a TRW credit report, had been disseminated to 84 Lumber by Star Bank. They admitted that at that very moment they felt humiliated and injured. Their obligation to investigate whatever claims they wished to pursue arose at that time, especially because they were then being actively represented by counsel. Moreover, Gonzales has presented documentary evidence showing that he served their attorney Fusco on October 8, 1993 with a copy of the subpoena that was issued to Star Bank. The Hahns have been unable to present any evidence contradicting Gonzales's affidavit and corresponding exhibits.

*3. The district court did not err in declining to resolve issues regarding the propriety of the subpoena*

The Hahns raise numerous challenges regarding the propriety of the subpoena to Star Bank. In their original action they

alleged that there was no subpoena because it was not filed with the Court of Common Pleas. Once copies of the subpoena were produced, they contended that the copies were fabricated as allegedly evidenced by the fact that two versions are in the record, each with the signature of the notary Beth Wayne in different places. The Hahns presented a purported handwriting expert who stated in his affidavit that one of the signatures of Beth Wayne might be hers, but not both, although he had not examined any other examples of her signature. Wayne's affidavit, on the other hand, states that both signatures are hers. The Hahns also challenged the alleged date upon which the subpoena was notarized. According to the Hahns, these defects and questions raise triable issues of fact. The district court explicitly declined any ruling on these issues, finding that Star Bank's motion could be resolved without such a ruling.

We find that the district court did not err in declining to resolve the issues raised by the Hahns regarding the details of the subpoena. In particular, we note that the questions raised by the Hahns are irrelevant to the statute of limitations issue discussed above. Like the district court, we believe that the resolution of Star Bank's motion at issue did not require further exploration into the numerous allegations raised about the subpoena.

### 4. The Hahns have no valid claims against the individual Star Bank defendants

■ The Star Bank employees named in the Hahns' complaint include Jerry Grundhofer (the Chief Executive Officer of Star Bank), David Moffett (the Chief Financial Officer of Star Bank), Thomas R. Green (the Statutory Agent for Star Bank), Jeff Bonynge (a Vice President of Star Bank), and Paul Beery (a Vice President of Star Bank). Claims against these individuals do not survive for numerous reasons. First, no individual liability can be premised on FCRA because we have concluded that the FCRA claims are barred by the statute of limitations. *See*

Part II.A.2. above. Second, an employee of a corporation has no personal liability for the torts of the corporation unless the individual personally participated in the challenged actions. *See Young v. Featherstone Motors, Inc.*, 97 Ohio App. 158, 124 N.E.2d 158, 166 (1954). Finally, the Hahns' complaint fails to sufficiently allege any wrongdoing on the part of the named individuals.

■ The complaint contains no allegations whatsoever against Grundhofer and Moffett, and therefore the Hahns can maintain no claim against them. Green was named solely because he was the statutory agent for service of process on Star Bank, which is wholly insufficient to state a claim upon which relief can be granted. With respect to Bonynge, the only claim against him is that he "wilfully misrepresented that a subpoena existed" and "specifically expressed to plaintiff that he believed that a subpoena existed before the information was disclosed." But Bonynge made no misrepresentation to the Hahns because a subpoena did in fact exist. They thus have no claim against him. Finally, the only contention against Beery is that he was "in charge of their loan at the time of the wrongful release of information." There is no allegation that Beery was personally involved in any tortious conduct by Star Bank, and therefore the Hahns have failed to state a claim against Beery.

For all of these reasons, the district court properly dismissed the Hahns' claims against the individual Star Bank employees.

### 5. The Hahns' constitutional right to privacy and civil rights claims against the Star Bank defendants

■ This court has held that "the Constitution does not encompass a general right to nondisclosure of private information." *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir.1981). Rather, the constitutional right to privacy is limited to certain "fundamental" rights that are "implicit in the concept of ordered liberty." *Id.* (cita-

tions and internal quotation marks omitted). We agree with the district court that the Hahns' asserted interest in the nondisclosure of their loan file is "far afield" from such fundamental rights, and therefore affirm the dismissal of their constitutional right to privacy claim.

The Hahns also raise civil rights claims under 42 U.S.C. §§ 1985(2) and 1985(3). Section 1985(2) relates to conspiracies to interfere with the administration of justice in federal courts, and is clearly inapplicable. An essential prerequisite for an action under § 1985(3), on the other hand, is evidence that the defendant's conduct was motivated by racial or class-based discriminatory animus in violation of a plaintiff's right to equal protection under the law. *See, e.g., Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). As the district court emphasized, "Not only do the Hahns fail to allege or establish such animus, they also fail to allege or establish that they are members of a class warranting the protection of the equal protection doctrine." We agree that these claims were properly dismissed.

6. *The district court's decision not to exercise supplemental jurisdiction over the state law claims*

The state law causes of action asserted in the Hahn's refiled complaint against the Star Bank defendants include breach of a contractual duty of confidentiality, invasion of privacy, defamation, breach of trust, interference with business relations, negligence, the tort of outrage, and emotional distress. These counts were drafted and filed by counsel for the Hahns. All of them were dismissed by the district court without prejudice. Given that the district court correctly dismissed the Hahns' federal claims, and with complete diversity of citizenship lacking, it properly rejected supplemental jurisdiction over the state law claims. *See United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("[I]f the federal claims [supporting supplemental jurisdiction] are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

**B. Denial of the Hahns' motion for leave to amend their complaint**

1. *Standard of review*

Because the Hahns were proceeding *pro se* when they filed their proposed amended complaint, the district court had to liberally construe their pleading and hold the complaint to a less stringent standard than a similar pleading drafted by attorneys. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). This less stringent standard, however, does not mean that *pro se* plaintiffs are entitled to take every case to trial. *See Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir.1996). Rule 15(a) of the Federal Rules of Civil Procedure explicitly states that leave to amend a pleading should be "freely given when justice so requires." Fed.R.Civ.P. 15(a). The Supreme Court has interpreted this statement to mean that "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' " *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The district court denied the Hahns' motion to amend on the basis of the futility of their four new claims, finding that none of them would be able to withstand a motion to dismiss.

On appeal, we generally review a district court's denial of a motion to amend for abuse of discretion. *See LRL Properties v. Portage Metro Housing Auth.,* 55 F.3d 1097, 1104 (6th Cir.1995). When the district court bases its decision on the legal conclusion that the proposed amendment

be futile, however, we review the decision *de novo. See id.*

### 2. The Hahns fail to allege the necessary elements for a procedural due process violation under 42 U.S.C. § 1983

The Hahns' first new cause of action states that defendants' actions "in obtaining confidential records of the Plaintiffs, using the wrongfully obtained information against Plaintiffs, and generally failing to follow due process of law, has caused damages to the Plaintiffs." These actions allegedly violated their civil rights "for which Plaintiffs assert a cause of action against Defendants based on a denial of procedural due process." In support their claim, the Hahns cite *Messick v. Leavins,* 811 F.2d 1439, 1440 (11th Cir.1987), as an example of the type of action they assert. *Messick* involved a cause of action alleged under 42 U.S.C. § 1983 for the deprivation of property without due process of law.

 To establish a procedural due process claim pursuant to § 1983, plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest. *See, e.g., Zinermon v. Burch,* 494 U.S. 113, 125–26, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). This court has stated that for the purposes of such claims brought under § 1983, "the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Vicory v. Walton,* 721 F.2d 1062, 1066 (6th Cir.1983). In other words,

> a party may maintain a procedural due process § 1983 case in federal court if he alleges and proves that there was a constitutional violation under color of law and:
> 1. The state did not have a remedy; or

> 2. The state had a remedy but it was deemed inadequate; or
> 3. The state had an adequate remedy in form, both procedurally and in damages, but the state did not apply it or misapplied its remedy.

*Haag v. Cuyahoga County,* 619 F.Supp. 262, 278–79 (N.D.Ohio 1985), *aff'd.* 798 F.2d 1414 (6th Cir.1986).

The Hahns' proposed amended complaint alleges that the defendants' actions in obtaining their loan file by means of a subpoena violated their rights to procedural due process. This claim was found futile by the district court because (1) they failed to allege why the state procedures relating to the issuance of a subpoena are inadequate, and (2) they did not provide any factual support for their allegations that they were deprived of a life, liberty, or property interest by the defendants' actions.

 In the first place, the Hahns provide no support for their claim that the state proceedings were constitutionally inadequate. In fact, the uncontroverted evidence shows that their attorney was timely provided with a copy of the subpoena. Although the Hahns have never conceded this point, and their attorney claims not to remember, neither the Hahns nor their attorney have alleged facts that directly contradict the defendants' evidence. So though it may be true that the Hahns' attorney did not inform the Hahns of the subpoena's existence, the Hahns cannot now be permitted to bring a constitutional due process claim simply because their attorney failed to utilize the proper state channels available to him to challenge the subpoena.

 Secondly, the Hahns claim that they have a property interest in their loan file, based on their implied and actual contracts of confidentiality with Star Bank. In response, Star Bank maintains that its good faith compliance with a facially valid subpoena was entirely proper, regardless of any alleged contract of confidentiality.

The district court ruled that because the Hahns had no rights against any of the defendants under FCRA, the Hahns could not demonstrate any property rights warranting protection under the Due Process Clause. Given that the Hahns cannot maintain a FCRA claim against any of the defendants, we affirm the district court's ruling that their due process claim is futile. In addition, we have already rejected their claim based on the theory of a constitutional right to privacy. See Part II.A.5. above.

### 3. The Hahns fail to sufficiently allege a claim for deprivation of a federal right under 42 U.S.C. § 1983

■■■ For their second new cause of action, the Hahns claim that the defendants, acting under color of state law, deprived them of their constitutional rights when they "obtained the confidential records of Plaintiffs from defendant Star Bank." In order to establish liability under § 1983 for a cause of action other than a violation of procedural due process, a plaintiff must show that the defendants while (1) acting under color of state law (2) caused the deprivation of a federal right, constitutional or statutory. See Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (citing Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)). If either element is missing, then a § 1983 claim has not been properly pled. See Christy v. Randlett, 932 F.2d 502, 504 (6th Cir.1991).

In support of the first element, the Hahns claim that the defendants acted under color of state law when Gonzales issued a subpoena, thereby transforming himself into a state actor. They cite the case of Timson v. Weiner, 395 F.Supp. 1344 (S.D.Ohio 1975), to substantiate their theory. The Timson court noted that the conduct of counsel in representing clients before a state tribunal does not in and of itself constitute action under color of state law for the purposes of § 1983. See id. at 1349. But the court ultimately held that the issuance of a subpoena by the Ohio State Personnel Board of Review is an act of the state of Ohio and "that when such a subpoena is caused to be issued by a private litigant or attorney pursuant to the subpoena privilege granted litigants by the State of Ohio, such an act is state action for the purposes of the Fourteenth Amendment and action under color of state law for purposes of 42 U.S.C. § 1983." Id. at 1348–49.

In response, the Gonzales defendants rely on the case of Barnard v. Young, 720 F.2d 1188 (10th Cir.1983). In Barnard, the Tenth Circuit held that a private attorney who caused a subpoena duces tecum to issue was not a state actor for the purposes of § 1983. See id. at 1189. The Barnard court relied upon the "vast weight of authority that private attorneys, by virtue of being officers of the court, do not act under color of state law within the meaning of section 1983." Id. (citing cases from the United States Supreme Court and the Second, Third, Fourth, Fifth, Seventh, and Tenth Circuits). According to the Tenth Circuit, if "an attorney does not become a state actor merely by virtue of instigating state court litigation, then the attorney does not become a state actor merely by employing state authorized subpoena power." Id. (citation omitted).

■■ The district court in the present case was faced with general authority from a sister circuit versus a district court decision applying Ohio law, which is the same state that authorized the Gonzales subpoena. Placed in such a predicament, the district court assumed for the purposes of its opinion that Timson was the proper law to apply. This is a matter of first impression in this circuit. Because we are of the opinion that Timson was wrongly decided, we now put this circuit on record as holding that a private attorney issuing a subpoena does not become a state actor for the purposes of § 1983. In doing so, we adopt the reasoning set forth in Barnard. See 720 F.2d at 1189.

■■ The second element requires a plaintiff to establish the deprivation of a federal right. This the Hahns completely

failed to do. They offered only a conclusory statement that "Plaintiffs have been deprived of their rights, privileges and immunities secured by the Constitution and the laws of the United States of America to which they are entitled as citizens of said country by the actions of the Defendants and for which they seek restitution pursuant to 42 U.S.C. § 1983 against the Defendants." We concur in the district court's conclusion that these bald assertions regarding a general deprivation of civil rights are insufficient to withstand a motion to dismiss. *See, e.g., Smith v. Rose,* 760 F.2d 102, 106 (6th Cir.1985).

### 4. The Hahns fail to sufficiently allege the elements of a claim for the intentional infliction of emotional distress

■ The Hahns' third new cause of action alleges the tort of intentional infliction of emotional distress against all of the defendants. According to the Supreme Court of Ohio, the tort of intentional infliction of emotional distress is characterized as follows: " 'One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress[.]' " *Yeager v. Local Union 20,* 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983) (quoting Restatement (Second) of Torts § 46(1) (1965)). In their proposed amended complaint, the Hahns aver that "the actions of the Defendants ... have caused emotional distress, pain, suffering and damages to the Plaintiffs." The Hahns do not allege, however, that the actions of the defendants were outrageous, or that the resulting emotional distress to the Hahns was severe. Accordingly, the district court found that the Hahns failed to set forth all of the elements of a *prima facie* case under Ohio law. We concur with this ruling.

### 5. The Hahns fail to state a claim for abuse of process

■ The Hahns' fourth and final proposed cause of action raises a claim for abuse of process against all of the defen-

dants. In particular, they contend that the defendants' actions "in issuing no subpoena or an invalid subpoena and acquiring personal and privileged information of the Plaintiffs is an abuse of process." To establish a claim for abuse of process under Ohio law, a plaintiff must allege the following: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co.,* 68 Ohio St.3d 294, 626 N.E.2d 115, 116 (1994). Under the second element, " 'there is no liability [for abuse of process] where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.' " *Id.* at 118 n. 2 (quoting William L. Prosser & Page Keeton, The Law of Torts § 121, at 898 (5th ed.1984)) (brackets in original). Using this analysis, the district court properly concluded that the Hahns fail to state a cause of action for abuse of process. The Hahns simply made conclusory allegations regarding the defendants' ulterior motives with no facts to support those contentions. Accordingly, we affirm the district court's determination that this claim was futile.

### C. The district court's dismissal of all remaining claims against the G–P defendants, the 84 Lumber defendants, and the Gonzales defendants

#### 1. Standard of review

A district court's dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure is reviewed *de novo. See Weiner v. Klais & Co.,* 108 F.3d 86, 88 (6th Cir.1997). All well-pled allegations of the complaint are taken as true. *See id.* "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal

theory." *Id.* In sum, we conduct essentially the same analysis as the district court in that "we take the plaintiff's factual allegations as true and if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief, then ... dismissal is proper." *Id.* (internal quotation marks omitted) (ellipses in original).

### 2. FCRA claims against the G–P defendants, the 84 Lumber defendants, and the Gonzales defendants are barred by the statute of limitations

The Hahns allege that these defendants violated FCRA by (1) negligently and wilfully obtaining a consumer report for an impermissible purpose under 15 U.S.C. § 1681b, (2) failing to abide by 15 U.S.C. § 1681d, which deals with the disclosure of investigative consumer reports, and (3) knowingly and wilfully obtaining information about the Hahns from a consumer reporting agency under false pretenses in violation of 15 U.S.C. § 1681q. They further contend that these defendants, through the actions of Star Bank, violated 15 U.S.C. § 1681g, which delineates a consumer reporting agency's disclosure requirements with respect to consumers. All of the Hahns' FCRA claims against these defendants are barred by the statute of limitations for the same reasons as set forth in Part II.A.2. above.

### 3. Constitutional right to privacy and civil rights claims against the G–P defendants, the 84 Lumber defendants, and the Gonzales defendants

The Hahns raise the same constitutional right to privacy and civil rights claims against these defendants as they did against the Star Bank defendants. These claims do not state a cause of action upon which relief can be granted for the same reasons as discussed in Part II.A.5. above.

### 4. State law causes of action against the G–P defendants, the 84 Lumber defendants, and the Gonzales defendants

The district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the state law claims for the same reasons given in Part II.A.6. above. *See Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130.

### D. The Hahns' contention that they were denied the opportunity for discovery

#### 1. Standard of review

Trial courts have broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined. *See Landis v. North Am. Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936). When reviewing a district court's decision to limit discovery, we will intervene only if the decision was an abuse of discretion resulting in substantial prejudice. *See Emmons v. McLaughlin,* 874 F.2d 351, 356–57 (6th Cir.1989).

#### 2. The district court did not abuse its discretion in limiting discovery

The Hahns assert that the district court erred in not allowing them the opportunity to conduct discovery. In a preliminary order dated December 1, 1997, the district court declared that "discovery will be stayed pending resolution of the pending Motion to Dismiss or for summary judgment, which is now at issue. If plaintiffs believe that they need discovery to respond to any future motions for summary judgment, they shall so move." Despite being represented by counsel at that time, the Hahns did not state any need for discovery until April 21, 1998, which was a month after the district court had granted summary judgment in favor of Star Bank. More importantly, the facts that the Hahns claim that they needed to discover have no relevance to the dispositive legal

issues in question. They sought to correct any and all misstatements made by the district court and the various defendants. Because the information they were seeking would not have salvaged their claims, substantial prejudice did not result from the district court's limitation on discovery.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the decision of the district court.